**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
  seth@gutridesafier.com
Anthony J. Patek (State Bar No. 228964)
  anthony@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT FOR THE

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY KENT, MONICA BURROLA and NITAYA MCGEE, individuals, on behalf of themselves, the general public, and those similarly situated,<br><br>                         Plaintiffs,<br><br>        v.<br><br>UNILEVER UNITED STATES, INC.; and CONOPCO, INC.,<br><br>                         Defendants. | CASE NO.<br><br>**CLASS ACTION COMPLAINT FOR FRAUD, DECEIT, AND/OR MISREPRESENTATION; VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT; FALSE ADVERTISING; NEGLIGENT MISREPRESENTATION; AND UNFAIR, UNLAWFUL, AND DECEPTIVE TRADE PRACTICES**<br><br>JURY TRIAL DEMANDED |

## INTRODUCTION

1.      Plaintiffs Jeffrey Kent, Monica Burrola, and Nitaya McGee, by and through their counsel, bring this Class Action Complaint against Unilever United States, Inc., and Conopco, Inc. (referred to as "Defendants" or "Unilever"), on behalf of themselves, and those similarly situated, for fraud, deceit, and/or misrepresentation; violation of the Consumer Legal Remedies Act; false advertising; negligent misrepresentation; unfair, unlawful, and deceptive trade practices. The following allegations are based upon information and belief, including the investigation of Plaintiffs' counsel, unless stated otherwise.

2.      This case concerns Unilever's products sold under its "Love Beauty & Planet" and "Dove Men + Care" brands, including "Love Beauty & Planet" ("LBP") and "Dove Men + Care" shampoos, conditioners, body washes, and skin creams, which Defendant sells using the false claim that they are comprised of specific proportions of "Naturally Derived" ingredients

(e.g., "93% Naturally Derived"). The products include, but are not limited to, Unilever's Love Beauty & Planet  shampoos/conditioners (in at least fourteen different scents), hand and body washes (in at least six different scents), and hand and body creams (in at least twelve different scents), as well as Dove Men + Care shampoos, conditioners, and body washes (in at least twelve scents), and babyDove shampoos, conditioners, and skin products (collectively, "the Products"). A non-exhaustive list of the Products and the "Naturally Derived" claims made on each is attached hereto as Appendix B.

3. Defendant affirmatively represents that the Products are "X% Naturally Derived" (e.g., "93% Naturally Derived" for Love Beauty & Planet Vegan Silk Protein Shampoo; "97% Naturally Derived" for the Vegan Silk Protein & Chamomile Conditioner; and "90% Naturally Derived" for Dove Men + Care Eucalyptus + Birch 2-in-1 Shampoo & Conditioner). Defendant makes these claims on the front and back labels of the Products' packaging. Defendant also represents to consumers that many of the Products' synthetic ingredients are "plant-based," via Defendant's participation in the "SmartLabel" app. However, Defendant's representation regarding the Products is false and/or misleading.

4. Defendant's labeling suggests to reasonable consumers nationwide that X% or more (generally, ≥ 90%) of the ingredients in the Products originate in nature or are derived naturally.

5. In truth, most of the ingredients in the Products are synthetic, not natural. They do not originate in nature and are not derived naturally. Rather, they are of industrial-origin. Accordingly, the Products are only approximately 80-85% naturally derived ingredients.  As such, the "% Naturally Derived" claims are false.

6. In short, the Products do not contain the advertised proportion of Naturally Derived ingredients. Many of the exact same ingredients are used in other skin products and are not—and never have been—considered "Naturally Derived." Even when these compounds can occur in nature (e.g., citric acid), they are not generally available from natural sources on the scale required for use in mass-produced products and instead created through industrial chemical processes for use in the Products.

7.      Unilever's practice is also inherently deceptive and misleading. Based on Plaintiffs' investigation, Unilever is labeling the Products as "X% Naturally Derived" ingredients based on its use of the proprietary standard ISO 16128 developed by the British Standards Institute ("BSI", a private, industry-based group). That standard uses a Byzantine method to calculate "naturally derived" in which one compares the mass of the atoms that were in a "natural" starting material to the total mass in an industrially-produced chemical made from that starting material to calculate the "% naturally derived." By doing this, the manufacturer misleads consumers by characterizing synthetic chemicals as "naturally derived."

8.      Even if an average consumer could obtain the ISO 16128 standard (by paying fees of over $400 to the British Standards Institute), they would not understand it, because it is complicated and written for chemists. Indeed, the British Standard Institute acknowledged as much in the ISO 16128 publication, stating "Neither ISO 16128-1 nor this document [i.e., ISO 16128-2] addresses product communication (e.g. claims and labelling), . . . characteristics of packaging materials or regulatory requirements applicable for cosmetics." In other words, the BSI states in the standard that it is not intended for use in product labeling and product communications. Despite this clear instruction not to use the standard for labeling claims or advertisements, Defendant has deceptively chosen to do so.

9.      Plaintiffs purchased the Products believing they were purchasing hair care products made predominantly of ingredients obtained directly from natural sources or derived in a natural manner, like avocado oil. Plaintiffs purchased the skin care products with "X% naturally derived" believing that the "Naturally Derived" ingredients made the products better for the environment, safer, and better for their hair and skin than products comprised of synthetic, industrially-produced chemicals.

10.     Through its marketing and advertising, Defendant intentionally misled and deceived Plaintiffs to believe that the Products were comprised of specific high proportions of ingredients directly derived from or originating in natural sources (e.g., extracted directly from plants) and had the attendant perceived benefits of natural ingredients.

11.     Defendant's marketing and advertising representations and omissions concerning the Products were directed at inducing, and did induce, Plaintiffs and Class Members to purchase the Products when they would not have otherwise, or at higher prices than they would otherwise have paid, had they known the truth of the matter.

12.     Defendant knew that the Products it sold were not comprised of the advertised proportions of naturally derived ingredients, and that its advertising materials were false and deceptive in describing the Products as comprising the advertised proportions of naturally derived ingredients.

13.     Despite knowing that its advertisements falsely and deceptively stated that the Products were made of "X% naturally derived ingredients," Defendant refused and failed to change the labels, remove the false representations, or otherwise inform Plaintiffs, those similarly situated and/or the general public of the Products true composition with respect to naturally derived ingredients.

## PARTIES

14.     Plaintiff Jeffrey Kent is, and at all times alleged in this Class Action Complaint was, an individual and a resident of San Francisco in San Francisco County, California. Mr. Kent intends to remain in California and makes his permanent home there.

15.     Plaintiff Monica Burrola is, and at all times alleged in this Class Action Complaint was, an individual and a resident of Rio Linda in Sacramento County, California. Ms. Burrola intends to remain in California and makes her permanent home there.

16.     Plaintiff Nitaya McGee is, and at all times alleged in this Class Action Complaint was, an individual and a resident of Riverside in Riverside County, California. Ms. McGee intends to remain in California and makes her permanent home there.

17.     Defendant Unilever United States, Inc. is a corporation formed under the laws of the state of Delaware, having its principal place of business in New Jersey.  Unilever United States, Inc. markets and sells Love Beauty & Planet and Dove Men products across the United States.  Unilever United States, Inc. has manufacturing and supply chain operations within the state of California, including permanent facilities in Los Angeles and the surrounding area.

18.     Conopco, Inc., d/b/a "Unilever Home & Personal Care" is a corporation formed under the laws of the state of Delaware, having its principal place of business in Greenwich, CT. Conopco is a subsidiary corporation of Unilever United States, Inc. focused on home and personal care products, including the Products at issue here. Like Unilever United States, Inc., Conopco, Inc. has manufacturing and supply chain operations within the state of California, including permanent facilities in Los Angeles and the surrounding area.

## JURISDICTION AND VENUE

19.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2). The aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; and Plaintiffs and Defendants are citizens of different states.

20.     The injuries, damages and/or harm upon which this action is based, occurred or arose out of activities engaged in by Defendants within, affecting, and emanating from, the State of California. Defendants regularly conduct and/or solicit business in, engage in other persistent courses of conduct in, and/or derive substantial revenue from products provided to persons in the State of California. Defendants have engaged, and continue to engage, in substantial and continuous business practices in the State of California, and Defendants Conopco, Inc.  and Unilever United States, Inc. are residents of California, each with a principal place of business within the State of California.

21.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the state of California, including within this District.

22.     In accordance with California Civil Code Section 1780(d), Mr. Kent concurrently files herewith a declaration establishing that he purchased Unilever's "Dove Men's + Care" Eucalyptus + Birch shampoo in San Francisco, California in August of 2024. (Mr. Kent's declaration is attached hereto as Appendix A.)

23.     Plaintiffs accordingly allege that jurisdiction and venue are proper in this Court.

**SUBSTANTIVE ALLEGATIONS**

**The Market for Natural Beauty Products**

24.    The market for "natural" beauty products, including skin care, skin care and cosmetics, is large and growing. *See, e.g.*, Soyoung Kim and Yoo-Kyoung Seock, IMPACT OF HEALTH AND ENVIRONMENTAL CONSCIOUSNESS ON YOUNG FEMALE CONSUMERS' ATTITUDE TOWARDS AND PURCHASES OF NATURAL BEAUTY PRODUCTS, Int. J. Consumer Studies, 33:627-238 (2009) (reporting global sales of $7B for "natural" beauty products in 2007, with expected growth rate of ~9% per year). Surveys of consumers in the United States and Europe show consistent demand for "natural" products, including those with natural ingredients. *See, e.g.*, Seyoung Kim, IMPACT OF HEALTH AND ENVIRONMENTAL CONSCIOUSNESS ON YOUNG FEMALE CONSUMERS' ATTITUDE TOWARDS AND PURCHASES OF NATURAL BEAUTY PRODUCTS, Int. J. Consumer Studies, 33:627-238 (2009); Nora Amberg and Csaba Fogarassy, GREEN CONSUMER BEHAVIOR IN THE COSMETICS MARKET, Resources, 8:137 (2009) ("Currently, marketing trends are turning towards natural solutions for cosmetics. . . ."); Nora Amberg, APPEARANCE OF NATURAL COSMETICS IN CONSUMER BEHAVIOR RELATED TO COSMETICS IN HUNGARY, Visegrad J. Bioeconomy and Sustainable Dev., Vol. 12(2) at 71-74 (2023) ("Today, the development of healthier and more environmentally conscious lifestyle is increasing consumer perceptions and interest in natural products in particular, including cosmetics.").

25.    This desire for natural products stems from two material beliefs among consumers: (i) the belief that natural products are safer and/or better for one's body; and (ii) the belief that natural products are better for the environment. *See* Kim, Int. J. Cons. Studies at abstract; Amberg, Resources at 2-3 (discussing association of natural cosmetics with "healthy lifestyle" and "environmental protection and sustainability questions").

26.    Studies show that these consumer preferences translate into increased purchases of "natural" products. *See* Kim, Int. J. Cons. Studies at 627 (finding environmentally-conscious and health-conscious consumers were more likely to purchase "natural" products, and were willing to pay more for them); Amberg, Visegrad J. Bioeconomy and Sustainable Dev., at 72 (70% of respondents willing to pay more for a cosmetic with a natural ingredient).

27.     According to the survey data available, consumers who display these purchasing preferences, particularly environmentally-conscious consumers, place high importance on "no use of chemical ingredients." Kim, Int. J. Cons. Studies at 633; *see also id.* at 636 ("This finding is consistent with the observation made in a previous survey of UK  consumers, conducted by Organic Monitor (2007) that consumers; major concern in the purchase of natural and organic beauty products is absence of synthetic chemicals."). In this context, "chemical ingredients" means synthetic or man-made chemicals. *See, e.g.*, Oxford Dictionary ("chemical" = "a compound or substance that has been purified or prepared, especially artificially."), available via Google.com (accessed Jan. 18, 2024); Mirriam-Webster Dictionary ("a substance obtained by a chemical process or producing a chemical effect"), available via https://www.merriam-webster.com/dictionary/chemical (accessed Jan. 18, 2024); *see also* Jiali Zhang and Meijuan Zhou, Factors Influencing Consumers' Purchasing Behavior in Natural Cosmetics, Univ. Uppsala Master's Thesis (2009), at 1 (defining "natural" products as those "mainly made of plant materials from agricultural-based production"; Amberg, Resources at 2-3 ("Green or natural cosmetics are made out of natural resources, without the use of chemicals, coloring additives, or other non-natural mixtures.").

28.     At the same time, consumers' ability to discern between truthful and false or deceptive claims is limited. Jiali Zhang and Meijuan Zhou, Factors Influencing Consumers' Purchasing Behavior in Natural Cosmetics, Univ. Uppsala Master's Thesis (2009), at abstract ("Although consumers' need for a healthy and sustainable lifestyle drives natural cosmetic consumption, various claims of natural cosmetics make consumers confused and distrustful." Noting further that "lack of knowledge" and "non-harmonized certifications" led to "inconsistency between consumers' purchasing intention and actual behavior."); Kim, Int. J. Cons. Studies at 635 (finding health and environmentally-conscious consumers "did not spend more time and effort than others on comparing alternative purchase options"). In other words, while health and environmentally conscious consumers wish to purchase appropriate natural products, they do not typically look beyond label claims to ensure those claims are true, and often lack the expertise and/or information necessary to determine the veracity of the claims.

29.     Accordingly, manufacturers of beauty products are trending toward aggressively marketing their products as natural.  *See* Zhang at 1 (noting cosmetics companies were actively developing natural products to satisfy the "inevitable trend" to meet this demand). These companies' advertising claims are often false or deceptive. This is true particularly for Defendant, as described below.

**Defendant Markets Its "Naturally Derived" Products to Consumers Who Prefer Natural Products**

30.     As noted above, the Products that are the subject of this Complaint are certain "X% Naturally Derived" Unilever hair and skin care products sold under its "Love Beauty & Planet" and "Dove" brands, including, without limitation, the following:

- Love Beauty & Planet Vegan Silk Protein & Chamomile Shampoo

- Love Beauty & Planet Vegan Silk Protein & Chamomile Conditioner

- Love Beauty & Planet Vegan Biotin & Sun-Kissed Mandarin Shampoo

- Love Beauty & Planet Vegan Biotin & Sun-Kissed Mandarin Conditioner

- Love Beauty & Planet Vegan Keratin & Sun-Kissed Mandarin Shampoo

- Love Beauty & Planet Vegan Keratin & Sun-Kissed Mandarin Conditioner

- Love Beauty & Planet Argan Oil & Lavender Shampoo

- Love Beauty & Planet Avocado Oil Mango & Vitamin E  Shampoo

- Love Beauty & Planet Coconut Water & Mimosa Flower Shampoo

- Love Beauty & Planet Murumuru Butter & Rose Shampoo

- Love Beauty & Planet Hemp Seed Oil & Nana Leaf Shampoo

- Love Beauty & Planet Charcoal & Bergamot Conditioner

- Love Beauty & Planet Watermelon & Hyaluronic Acid Plant-Based Body Wash

- Love Beauty & Planet Vanilla Bean & Hyaluronic Acid Plant-Based Body Wash

- Love Beauty & Planet White Peach & Aloe Vera Plant-Based Body Wash

- Love Beauty & Planet Kiwi & Peptides Plant-Based Body Wash

- Love Beauty & Planet Tea Tree and Vetiver Liquid Hand Wash

- Love Beauty & Planet Yuzu and Vanilla Liquid Hand Wash

- Love Beauty & Planet Watermelon & Mint Mojito Foaming Hand Wash

- Love Beauty & Planet Eucalyptus & Vetiver Hand Sanitizer Lotion

- Love Beauty & Planet Warm Vanilla & Coconut Body Cream

- Love Beauty & Planet Cherry Blossom & Tea Rose Body Cream

- Love Beauty & Planet Rice Oil and Angelica Essence Body Lotion

- Dove Men + Care Eucalyptus + Birch 2-in1 Shampoo & Conditioner

- Dove Men + Care Eucalyptus + Cedar Oil Plant-Based Body Wash

- Dove Men + Care Sandalwood + Cardamom Oil Plant-Based Body Wash

A full list of Products is included in Appendix B.

31.    Each of the "Naturally Derived" Products contains a representation that the Product is comprised of a specific percentage of "Naturally Derived" ingredients (e.g., "93% NATURALLY DERIVED").[1] This representation is placed on both the front and back labels of the Products' packaging.

32.    On the front of the package, it is in large, bold font, in a prominent location near the center emphasized by a seal logo. There is no definition or asterisk linking the claim to a definition on the front label. The exact location of the statement varies.  In some, it appears on the upper right portion of the label. On others, it appears on the lower left portion of the front label.

33.    On the back label, each product typically includes a statement repeating the "X% Naturally Derived" claim, and purporting to describe what "naturally derived" means.  For example, the back label of Love Beauty & Planet Plant-Based Vanilla Body Wash states: "92% of our formula is naturally derived, meaning it's unchanged from nature or keeps over 50% of its original structure after some processing.  This includes water and ingredients from plant, mineral and fermentation sources."

---

[1] The "X% Naturally Derived" representations were on the LBP Product labels until at least June 2023.  While it appears Defendants are removing the statement from certain labels on their web sites, ads for the LBP Products on third party websites such as Walmart and Amazon continue to display Products with  the "Naturally Derived" claims.  The claims still appear on the labels of Dove Products as well.

34.    Each of the Products is identical in that it contains one of the above front label statements (i.e., "X% Naturally Derived").

35.    Each of the Products is substantially similar in that it contains a back label statement purporting to adopt the "keeps over 50% of its original structure" definition of "naturally derived." While the exact verbiage may change slightly from one product to the next, all purport to apply the same basic definition. For example, Love Beauty & Planet's Mineral Shimmer Body Lotion's back label includes a paragraph that states:

**"95% Naturally Derived"**

"We consider an ingredient naturally derived if it's unchanged from nature or has a natural source and undergone some processing, but keeps 50% or more of its original structure. 95% of our formula, including water, is made up of naturally derived content."

Although this statement is not a verbatim copy of that described above in ¶ 33, it is identical for the purposes of Plaintiffs' claims and those of all similarly situated consumers. Each of the Products purchased by Plaintiffs contained a substantially similar statement on its back label.

36.    Each of the Products buttresses the perception that it is comprised of "Naturally Derived" ingredients by including additional references to plants and nature on its front labels, including references to being "plant-based." These references are reiterated on the Products' back labels as well, and, for a subset of the Products, are even in the Product name (e.g., Love Beauty & Planet Plant-Based Vanilla Body Wash).

37.    Appendix B includes the front and back labels for each of the "X% Naturally Derived" Products sold by Unilever under the Love Beauty & Planet and Dove brands.

**Representative LBP Product Labels**

38.    A representative image of the "Naturally Derived" Products' front label for the "Love Beauty & Planet" Vegan Silk Protein Conditioner is shown below:

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18



19      39.     The front label of Unilever's "Naturally Derived" Love Beauty & Planet Vegan

20 Silk Protein Conditioner contains the statement "97% Naturally Derived" in large, highly visible

21 text in the bottom left of the middle of the front label, in a color-contrasted circular seal slightly

22 below the product's name. The front label also contains images of branches and plants as its

23 background. The other "Love Beauty & Planet" Products contain essentially identical claims and

24 analogous plant imagery.

25      40.     A representative image of the Unilever "Naturally Derived" Products' back label

26 for the "Love Beauty & Planet" Vegan Silk Protein Conditioner is shown below:

27
28



41.  The "Love Beauty & Planet" Vegan Silk Protein Conditioner back label above displays "97% NATURALLY DERIVED" at its top right corner.  The label goes on below to state; "We believe in carefully selecting ingredients sourced from nature.  97% of our formula, including water, is naturally derived, meaning it's unchanged from nature or, after some processing, keeps over 50% of its original structure."  In a list below that, the back label states "YES with Plant Based Detanglers."

42.  Other Unilever products display Unilever's putative definition of "naturally derived" much less prominently, such that consumers are less likely to see it than with the Vegan Silk Protein back label described above.  For instance, the Love Beauty & Planet Coconut Oil & Vegan Collagen, Ultra Deep Hydration - Sulfate-Free Shampoo and Conditioner omits the top of label statement described above in favor of placing the statement "97% of our formula, including water, is naturally derived, meaning it's unchanged from nature or, after some

processing, keeps over 50% of its original structure" at the bottom of the label in relatively small print.

43.    The ingredient list for the"Love Beauty & Planet" Vegan Silk Protein Conditioner is: Water (Aqua)*, Cetearyl Alcohol*, Cocos Nucifera (Coconut) Oil*, Behentrimonium Chloride, SP1 Spider Polypeptide-1**, Anthemis Nobilis Flower Extract*, Fragrance (Parfum), Dipropylene Glycol, Lactic Acid*, Sodium Benzoate, Citronellol, Geraniol, Hydroxycitronellal, Linalool. The asterisk links to the statement "NATURALLY DERIVED INGREDIENTS."

44.    The ingredient list for the "Love Beauty & Planet" 3-in-1 Avocado Oil, Mango, and Vitamin E Shampoo is: Water (Aqua)*, Cetearyl Alcohol, Hydroxypropyl Starch Phosphate*, Decyl Glucoside*, Lactic Acid*, Stearamidopropyl Dimethylamine*, Fragrance (Parfum), Behentrimonium Chloride*, Persea Gratissima (Avocado) Oil*, Mangifera Indica (Mango) Juice*, Tocopheryl Acetate, Cocos Nucifera (Coconut) Oil*, Citrus Nobilis (Mandarin Orange) Peel Oil*, Dipropylene Glycol, Sodium Benzoate, Sodium Chloride*, Benzyl Benzoate, Hexyl Cinnamal, Limonene, and Linalool.  The asterisk connects to the statement "*Naturally Derived ingredients."

45.    The Love Beauty & Planet website at https://www.lovebeautyandplanet.com includes a page for each "Love Beauty & Planet" product that reinforces the messaging on the respective Product label by emphasizing that the shampoo uses "clean ingredients" and, e.g., "this conditioner formula is 97% Naturally Derived."   The front label of each product is displayed as well.[2]

46.    Each product on the Love Beauty & Planet web site links to a "smartlabel" that is displayed via smarltlabel.com and/or the Smartlabel app available on Android and iPhones. The smartlabel for each Unilever product describes specific ingredients as "naturally derived." The smartlabel does not explain or define "naturally derived," but instead leaves consumers to

---

[2] As noted above, this included LBP labels with the"X% Naturally Derived" claims until sometime at least June 2023. At some time in late 2023 or 2024, Defendants removed the "naturally derived" claim from the LBP Product labels. However, as of the date of this filing, the lovebeautyandplanet.com website still makes the claim on each product page, in the description of the product.

apply the common meaning of that phrase. *See, e.g.,* https://smartlabel.unileverusa.com/ 055086000024-0002-en-US/index.html#ingredients.

**Representative Dove Product Labels**

47.    On the front label of the "Dove Men + Care" Product, the "X% NATURALLY DERIVED" statement is made on the front label. In particular, the number (e.g. "90%") is made in large font in sharply color-contrasted circle located on the right of the front label, near the top of the front label. A representative front label for "Dove Men + Care" Eucalyptus + Birch 2-in-1 Shampoo & Conditioner is shown below:

 

48.    The exact location of the "X% NATURALLY DERIVED" claim varies between the Dove Men + Care Products. For instance, some older products placed the claim in the middle right of the front label, rather at the top of the label as described above.

49.    The "Dove Men + Care" Eucalyptus + Birch 2-in-1 shampoo + conditioner back label contains the statement "90% NATURALLY DERIVED. We consider an ingredient naturally derived if it's unchanged from nature or has a natural source and undergone some processing, butt keeps more than 50% of its original structure. 90% of our formula, including

water, is made of naturally derived content." The product lists ingredients without identifying which are purportedly naturally derived.

50.    Print ads for Dove Men + Care Products further tout them as "X% Naturally Derived," sometimes placing statements such as "90% Naturally Derived" in large circle logos on the ads.

51.    Dove's website displays the labels for each Product as well, thereby repeating the "Naturally Derived" claims.  The Dove webpage also states that each Product  is "Made X% naturally derived* ingredients, including natural essential oils."   The asterisk links to the following statement further down the Product page: "We consider an ingredient naturally derived if it's unchanged from nature or has a natural source and undergone some processing but keeps more than 50% of its original structure. 92% of our formula, including water, is made up of Naturally Derived content." Each of the Dove Products also contains a list of ingredients.  This list is placed on the back of the Products' packaging, where it is less likely to be seen.  The ingredient lists are also displayed on Dove's website, as well as via SmartLabel.  The Dove website does not identify which ingredients it contends are naturally derived.  The SmartLabel site does not either.  The SmartLabel sites further notes that the ingredient descriptions are "provided by Dove."

52.    The website ingredient list for the "Dove Men + Care" Lime + Cedarwood 2-in-1 Shampoo and Conditioner is shown below:

## Ingredients

Water (Eau), Sodium Laureth Sulfate, Cocamidopropyl Betaine, Sodium Chloride, Fragrance (Parfum), Citric Acid, Sodium Benzoate, Dimethiconol, Carbomer, PPG-9, Guar Hydroxypropyltrimonium Chloride, TEADodecylbenzenesulfonate, Disodium EDTA, Juniperus Mexicana Oil, Citrus Aurantifolia (Lime) Oil, Citronellol, Geraniol, Limonene, Linalool

20.4 OZ

Go to SmartLabel™

CLASS ACTION COMPLAINT

53.     Sodium laureth sulfate and cocoamidopropyl betaine, both of which are synthetic and not naturally derived under the common definition of that phrase, are listed as the second and third ingredients by weight. In a typical shampoo formulation, these two ingredients would constitute approximately 15% of the product. Additionally, citric acid, sodium benzoate, dimethiconol, carbomer, PPG-9, TEA dodecylbenzenesulfonate, and disodium EDTA are all synthetic or, even if naturally occurring, sourced from synthetic manufacturing for use in mass-produced commercial products.

54.     Similarly, the website ingredient list for the "Dove Men + Care" Eucalyptus + Cedar Oil Body Wash is shown below:



55.     Cocoamidopropyl betaine, sodium benzoate, sodium methyl lauroyl taurate, and sodium lauroyl isethionate are the second through fifth listed ingredients by weight. Again, these ingredients, all of which are synthetic, would typically constitute approximately 15% of the formula.

**Unilever's "Naturally Derived" Claims Are False and Misleading**

56.     The ingredient lists above establish that natural ingredients such as lime and cedar oil are minor components of the Products, such that the X% naturally derived claims are false.

57.     The exact ingredients vary from one Unilever hair and skin care product to the next, but they display considerable overlap from one product to the next, and all establish that the Products are predominantly composed of ingredients produced using industrial chemical

processes. For the shampoos, such ingredients include sodium lauryl sulfate, sodium laureth sulfate, cetearyl alcohol, cocamidopropyl betaine, sodium methyl cocoyl taurate, hydroxypropyl starch phosphate, decyl glucoside, lactic acid, stearamidopropyl dimethylamine, behentrimonium chloride, tocopheryl acetate, dipropylene glycol, sodium benzoate, benzyl benzoate, hexyl cinnamal, limonene, and linalool. For the conditioners, such ingredients include, for example, cetearyl alcohol, behentrimonium chloride, dipropylene glycol, lactic acid, sodium benzoate, Acrylates/Beheneth-25 Methacrylate Copolymer, disodium EDTA, methylchloroisothiazolinone, methylisothiazolinone citronellol, coumarin, limonene, and linalool. The ingredient lists identify some compounds, such as citric acid, that occur in nature but are manufactured using industrial processes to meet the demands of mass-produced goods like the Products. Excluding differences in fragrances and extracts, the industrially manufactured ingredients appear to be the same within each brand and product line (e.g., "Love Beauty & Planet" shampoos; Dove Men + Care shampoos; etc.).

58.    For example, of the twenty (20) ingredients listed for the Dove Men + Care Eucalyptus and Birch 2-in-1 Shampoo and Conditioner, fourteen (14) are industrially-produced chemicals that most consumers would not identify as "natural" or "naturally derived," including one (citric acid) produced using industrial fermentation processes. One additional ingredient ("fragrance") is of ambiguous origin, though most consumer product fragrances are industrially-produced. Only water, sodium chloride, eucalyptus leaf oil and Betula Alba (i.e., birch) Leaf Extract are unequivocally natural in origin. Similar analyses hold true for all the "X% Naturally Derived" Products. For example, of the fourteen (14) ingredients listed for the LBP Silk Protein Conditioner, ten (10) are synthetic, including three of the top five by weight. Of the twenty (20) ingredients listed for the LBP Avocado Oil, Mango, and Vitamin E Shampoo, thirteen (13) are synthetic, including five of the top six by weight.

59.    As the above examples demonstrate, nowhere near 90% of the Unilever Products' ingredients are naturally derived. If one assumed the "% Naturally Derived" claims are based on weight—an issue that the label does not clarify—the only way the claim could be true is if it were based almost solely on water content. But even if that were true, the claims would suggest

to a reasonable consumer that the Products predominantly used natural ingredients obtained from natural sources with "minimal processing" that exclude industrial chemical modifications. Given that two of the top three ingredients by weight for the "X% Naturally Derived" Dove Men + Care 2-in-1 shampoo and conditioner are "sodium laureth sulfate and behentrimonium chloride"—both of which are industrially-produced chemicals—the Product is, on information and belief, > 10% non-Naturally Derived ingredients by weight. In standard shampoo and conditioner formulations, these two ingredients alone constitute roughly 15% of the product's formula. Plus many of the remaining ingredients—e.g., sodium benzoate, dimethiconol, carbomer, TEA dodecylbenzenesulfonate, PPG-9, disodium EDTA, propylene glycol, and linalool—are also synthetic. Thus, the "90% naturally derived ingredients" claim is false. And even if it is not false, it is misleading, for the reasons described further below.

60. Alternatively, if one were assessing the "% naturally derived ingredients" by number of ingredients, at most 25% of the Essential Botanical ingredients are naturally derived.

61. In short, the Products are predominantly composed of ingredients that are produced using industrial chemical processes. These ingredients are not "naturally derived" or of "natural origin."

62. On information and belief, even if one interpreted the claim to refer to the proportion by weight of the product that is *naturally derived (i.e., naturally occurring compounds obtained from natural sources or derived using natural means; not synthesized by man)*, the claim is not true.

63. Defendant falsely and misleadingly refers to synthetic, industrially-manufactured chemicals as "naturally derived" by assigning them a "% naturally derived" value based on percentage of the synthetic molecule, by mass, that was present in a naturally derived starting material. In other words, Defendant mischaracterizes industrial chemicals as " "Naturally Derived" in order to "greenwash" the Products and make them seem safer and more environmentally friendly.

64.     Defendant's "naturally derived" claims are based on the British Standards Institute's ISO[3] 16128: "Guidelines on technical definitions and criteria for natural and organic cosmetic ingredients and products." This standard sets forth an algorithm for calculating the % of a product that is of "naturally derived." It defines "derived natural ingredients" as "cosmetic ingredients of greater than 50 % natural origin, by molecular weight, by renewable carbon content, or by any other relevant methods, obtained through defined chemical and/or biological processes with the intention of chemical modification." ISO 16128 goes on to define the "natural origin index" as "a value indicating the extent to which a cosmetic ingredient meets the definitions of either natural ingredients in ISO 16128-1:2016, Clause 2, derived natural ingredients from ISO 16128-1:2016, Clause 3, or derived mineral ingredients from ISO 16128-1:2016, Clause 4." Broadly speaking, the "value indicating the extent to which a cosmetic ingredient meets" the standards corresponds to the percentage by weight of the end product that was in a natural starting material. On information and belief, Defendant uses this same basic algorithm as used for "natural origin index" and reports the result as "% naturally derived."

65.     ISO 16128 is unavailable to the public as a practical matter, as it is based on a 46-page proprietary standard (ISO 16128, parts 1:2016 ("Definitions for Ingredients") and 2:2017 ("Criteria for ingredients and products")) copyrighted by the British Standards Institute (BSI), a private, for-profit institution. The BSI forbids public distribution of the standard without its permission. Instead, the BSI sells the standard for roughly $400. As such, the BSI fails to disseminate the "standard" freely to the public at large.

66.     To obtain the standard in its entirety, a consumer would need to purchase two BSI publications costing a total of nearly $400. This is both unlikely and unreasonable for an ordinary consumer.

67.     The end result is that, for all intents and purposes, the public is entirely ignorant of how Unilever calculates the percentage of ingredients that is naturally derived/natural origin and what Unilever is communicating when it makes the naturally derived/natural origin claims.

---

[3] "ISO" is an acronym for 'International Organization for Standardization," which the BSI identifies as "a worldwide federation of national standards bodies."

68.     Even if the public did have access to ISO 16128, it is not designed for use in labeling and product communications—a fact which BSI states in the very first section of each volume of the standard. For instance, volume 2 states:

> Neither ISO 16128-1 nor this document [i.e., ISO 16128-2] addresses product communication (e.g. claims and labelling), human safety, environmental safety, socio-economic considerations (e.g. fair trade), characteristics of packaging materials or regulatory requirements applicable for cosmetics.

(Emphasis added.).  It is inherently problematic for Defendant to use a standard that explicitly states it is not addressing consumer-facing product claims and labelling for those purposes.

69.     ISO 16128's definition of "natural origin index" is very complicated and entirely beyond the ability of an ordinary consumer to understand. Chemical reactions which may be used to create "derived natural" compounds under ISO 16128 include amidation, olefin metathesis, Aldol reactions, Knoevenagel condensation, Claisen condensation, sulphation, hydrolysis, hydrogenation, the Guerbet reaction, and any form of oxidation or reduction. The natural origin index for the product as a whole is then calculated using a weight-adjusted summation of the % natural origin for each of the constituent ingredients.

70.     ISO 16128 is also inappropriate for use in labeling because it does not require uniform calculations. Instead, it allows the party calculating the "natural origin index" (i.e., the % natural origin or naturally derived) to include or exclude added water, depending on the party's preference. Accordingly, the same product could have two different "% natural origin" indices (i.e., % naturally derived), depending on who calculated it.  The standard is also ambiguous in that it defines "derived natural" ingredients as those of 50% or more "natural origin," measured by any of three criteria: "molecular weight," "renewable carbon content", or "any other relevant methods." But the standard does not define "renewable carbon content," nor what the "any other relevant methods" may be.  Laypeople are not versed in assessing molecular weights either.

71.     The stated purpose of ISO 16128 is "to encourage a wider choice of natural and organic ingredients in the formulation of a diverse variety of cosmetic products to encourage

innovation." In other words, ISO 16128's purpose is to provide an expansive definition "natural origin" to encourage manufacturers to use "natural" materials as ingredients for manufacturing.

72.    ISO 16128 is not a government standard, nor even a publicly agreed to standard. The BSI created ISO 16128 without any public comment.  Based on information on the ISO web site, it appears that ISO 16128 was designed solely by cosmetic industry scientists, without involvement of any consumer advocates or persons familiar with consumer advertising.

73.    For comparison of ISO 16128's use of "naturally derived" to an ordinary consumer's understanding of that term, consider aspartame. It is an artificial sweetener, in the sense that it is entirely man-made and does not occur in nature.  But it is potentially 100% "natural origin" under ISO 16128, because all the starting materials used to make it (two amino acids and methanol) are naturally-occurring compounds. But most ordinary consumers would not view aspartame as natural or "100% naturally derived."  This underscores how misleading ISO 16128 is when used in advertising, as Defendant's Product labels do.

74.    Similarly, hydrogenated vegetable oils, synthetic materials created using an industrial process which cannot be advertised as "natural" in foods, would be advertised as ~99% "natural origin" in cosmetics using the ISO 16128 standard, because only the added hydrogens would be deemed "non-natural"; the overwhelming majority of the mass of the hydrogenated vegetable oils would be the carbon, hydrogen, and oxygen atoms in the original vegetable oils. While the standards applicable to foods do not legally control cosmetic advertising, the fact that such claims would not be allowed in the food context demonstrates that most ordinary consumers would view ISO 16128's characterization of hydrogenated oils as >90% naturally derived as false and misleading.

75.    Even dioxins, toxic materials produced as byproducts when burning wood, could be categorized as "90% "natural origin," since the bulk of the mass of the dioxins are from wood, which is a natural material. Again, this demonstrates how ISO16128 falsely and misleadingly characterizes synthetic compounds as primarily "naturally derived."

76.    ISO 16128 is particularly inappropriate for use in marketing beauty products because the chemicals used in many beauty products have particularly high molecular weights,

such that even extensive chemicals modification is unlikely to change 50% or more of the starting ingredient's molecular weight. That is particularly true for the fatty acids and esters used in shampoos, conditioners, and moisturizers.

77. Ultimately, the only major group of chemicals deemed not "natural origin" or "naturally derived" under ISO 16128 is petroleum-based chemicals and new chemical materials whose mass is 50% or more derived from petrochemicals. This demonstrates that the ISO 16128 is arbitrary, in that a material whose mass is 49% from petroleum will be categorized 51% naturally derived, but one whose mass is 50% from petroleum will be categorized 0% naturally derived.

78. Defendant's labels are also misleading because, in combination with the labels' prominent and repeated references to natural ingredients such as "avocado oil," "eucaplytpus," and "chamomile," Defendant falsely suggests that plant-based compounds comprise a majority of the products' ingredients and/or weight. Defendant further reinforces this false and misleading claim by contrasting it with the "0%" claims for certain chemicals (e.g., parabens), which suggests that the "naturally derived"/"natural origin" ingredients are not industrially-manufactured chemicals, even though they actually are.

79. As the examples above show, the "% Naturally Derived" claims made by Defendant are more confusing than "100% natural" claims, because representing that, e.g., "80%" of ingredients are "naturally derived" requires the consumer to interpret how the 80% value was calculated. As a practical matter, "100% natural" always means the same thing, irrespective of how it is calculated. In contrast, a statement that a product is "80% naturally derived" is open to varying interpretations regarding whether that refers to a percentage of ingredients, mass, volume, or other measurement, each of which could mean very different things with respect to how much of the product is "natural" of "naturally derived." But the label itself does nothing at all to clarify whether the claimed % is based on weight, volume, number of ingredients, or something else (e.g., renewable carbon content, which ISO 16128 allows).

80. Concerned observers have noted the trend of advertising products as being made from "naturally derived" ingredients is misleading.

81.     For example, Chagrin Valley Soap and Salve, a company dedicated to marketing products made from natural ingredients, notes:

**Derived From . . . Naturally Derived From . . . Made From . . . Quite Confusing**

You will often see these words listed before or after an ingredient in a skincare product. So what do they mean? As usual, there is no standard for these terms so the consumer is left scratching their heads and asking the question, "Is this product natural."

Coconut is still considered natural whether it is whole, dried, or shredded. We can even obtain natural coconut oil, coconut milk, and coconut with minimal changes to the original coconut. However, once the oil is biochemically altered, it then becomes naturally derived or even synthetic.

A product label will list a chemical ingredient followed by the phrase "derived from …some natural substance." For example, cocamide diethanolamine (cocamide DEA) can be derived from the fatty acids of natural coconut oil.

Although this ingredient may start out as natural coconut oil, by the time it is separated out using petrochemicals and chemical solvents, and further processed to create a foam boosting agent--it is far from coconut oil and far from natural!

A product label will list a chemical ingredient followed by the phrase "naturally derived from …some natural substance." The words "naturally derived" live in a gray area because it is difficult to know if the ingredient is closer to natural or synthetic.

Just how far down the road from its natural source has this ingredient traveled? Some of these ingredients may be minimally processed and therefore are closer to their natural source. But others have been processed many times and depending on the "process" they may not resemble the original botanical ingredient at all. What determines the "naturalness" of a derived ingredient totally depends on the type of process used to manufacture that ingredient. Unfortunately, the consumer is not provided with this information.

A product label will list a chemical ingredient followed by the phrase "made from …some natural substance." Your guess is as good as mine.

This type of labeling is misleading for consumers.

https://www.chagrinvalleysoapandsalve.com/blog/posts/but-the-label-says-natural/     (last accessed December 6, 2022).

82.     Members of the Ninth Circuit have commented that "greenwashing" is a disturbing and increasingly common practice:

. . . [the at-issue] labeling nonetheless resembles a concerning practice known as "greenwashing." Greenwashing refers to "a set of deceptive marketing practices in which an entity publicly misrepresents or exaggerates the positive environmental impact or attributes of a product[.]"

Amanda Shanor & Sarah E. Light, Greenwashing and the First Amendment, 122 Colum. L. Rev. 2033, 2037 (2022); see also *id.* at 2056–57. The practice of greenwashing has resulted from the increasing number of American consumers who want to buy environmentally friendly, or "green," products. See 16 C.F.R. § 260.1 ("the Green Guides").
Greenwashing is not limited to environmental effects and is also used to describe the misleading or false labeling of a wide range of consumer products. For example, the practice of greenwashing also affects "the way consumers buy cosmetic and personal products." Alexa Riccolo, The Lack of Regulation in Preventing Greenwashing of Cosmetics in the U.S., 47 J. Legis. 120, 122 (2021). In the context of cosmetics and personal care products (e.g., shampoos and conditioners), the term is used to describe products that have "natural" labeling "but actually contain chemicals[.]" *Id.*

*McGinnity v. The Procter & Gamble Company*, No. 22-15080 (9th Cir. 2022) (J. Gould, concurring). Although *McGinnity* affirmed dismissal of a false advertising claim against Procter & Gamble ("P&G") arising from the phrase "Nature Fusion", that case is distinguishable because P&G argued that it had given notice to consumers that its ingredients were not "natural" by disclosing chemicals on the back label. Here, Defendant has advertised that those chemicals are naturally sourced; the ingredient list cannot act as notice that the chemicals are not natural if Defendant is telling consumers that those same chemicals are "naturally derived."

83.    An ordinary consumer would not have the knowledge required to determine which of the ingredients is natural or naturally derived versus being the product of an industrial chemical process. There mere fact that an ingredient has a "chemical sounding" name is no definitive indication whether it is natural or naturally derived versus synthetic. For example, citric acid is a naturally-occurring compound, but is produced industrially using either chemical synthesis or genetically-modified yeast. Cocamidopropyl betaine sounds like it might be natural, given the reference to coconuts in its name (i.e., "coc-"), but it is made in a two-step industrial process, beginning with the reaction of dimethylaminopropylamine with fatty acids from coconut or palm kernel oil, followed by use of chloroacetic acid to form the final product. Thus, despite sometimes using coconut oil as a starting material, there is nothing natural about it. As a result, these and other "naturally derived" claims made by Defendant are false and misleading to consumers.

84.    In contrast, Defendant knows or should know that its claims are false and/or misleading, because the BSI explicitly stated in the ISO 16128 publication that "Neither ISO

16128-1 nor this document [i.e., ISO 16128-2] addresses product communication (e.g. claims and labelling), . . . characteristics of packaging materials or regulatory requirements applicable for cosmetics." In other words, the BSI told Defendant and other third parties that the standard was not suitable for consumer communications (i.e., advertisements, labels, and marketing). Defendant thus had actual or constructive knowledge that ISO 16128 was likely to deceive and/or confuse consumers.

85.     Defendant's label claims conflict with official guidance from the Federal Trade Commission.   The "Green Guides," mentioned in *McGinnity*, instruct businesses to avoid "overstatement of environmental attributes," such as by characterizing an increase in recycled content from 2% to 3% as a "50% increase in recycled content," or advertising a trach bag as recyclable when trash bags are routinely not recycled. See 16 C.F.R. 230(c).  Similarly, the Green Guides state that, even if a marketer explains and can substantiate a product's environmental benefits, advertisements of environmental benefits may be misleading if the advertisement otherwise implies deceptive claims.   See id., § 260.4.   The Products' "naturally derived" ingredients claims are misleading in this respect, because they suggest that, because a majority of the molecular mass of the ingredients were sourced from non-petroleum sources, they are environmentally friendly and more "natural."  This is misleading because a synthetic chemical is not "natural" in any meaningful respect regardless of where its primary starting material was sourced, and there are many environmental effects that have no relation to the molecular mass of the starting material relative to the end product (e.g., the use of toxic chemicals in manufacturing, the identity of byproducts, the amount of energy used to manufacture the chemicals, etc.).

86.     The Green Guides also state it is deceptive to misrepresent, directly or indirectly, that a "product or package" is "made with renewable materials."  16 C.F.R. 260.16(a).  As noted above, ISO 16128 identifies "renewable carbon content" as a basis for claiming a product is "naturally derived" or "natural origin."   Accordingly, Defendant's references to "naturally derived" ingredients are also misleading because they fail to identify with sufficient specificity the basis for the natural content claims.

87.     In many cases, Defendant's claims are based on the specious assumption that merely using a plant as the initial source of carbon content makes the resulting synthetic chemical environmentally friendly.  This assumption is false because many of the ingredients (e.g., palm oil) begin as plants grown in environmentally damaging ways.  While these ingredients come from plants, the monoculture plantations where such plants are grown are often made by clear-cutting rain forests and other natural habitats, resulting in substantial environmental degradation.  Further, there is no guarantee those plants are grown using organic farming methods, as opposed to using pesticides and other environmentally-damaging chemicals. Accordingly, marketing these ingredients as environmentally-friendly by labeling them "Naturally Derived" is false or misleading.  See Amberg, Resources at 3 (noting green cosmetics were aimed at "environmental conservation, minimization of polluting, responsible usage of non-renewable resources, and *preservation of fauna and species*) (emphasis added).

## PLAINTIFFS' ALLEGATIONS

**Jeffrey Kent**

88.     Plaintiff Jeffrey Kent purchased Defendants' Dove Men + Care Eucalyptus and Birch 2-in-1 Shampoo and Conditioner from a Walgreens and a Safeway store in San Francisco, California. His last purchase was around August of 2024.

89.     Plaintiff Kent viewed and relied upon the products' labels, including the statement that each was "90% Naturally Derived" when purchasing the Dove Men + Care products. He relied on the "90% Naturally Derived " representation for the purchase and he purchased the products because of the 90% Naturally Derived " representation. He also believed in the truth of the representation, i.e., that the products were 90% naturally derived. Had Defendant not made the "Naturally Derived" ingredients claims on its packages in these circumstances, he would not have been drawn to the Products and would not have purchased them. At a minimum, he would have paid less for the Products. Moreover, had Defendant adequately disclosed the proportion of the Products that were naturally derived, Plaintiff Kent would not have purchased the Products or would have, at minimum, paid less for them. Plaintiff Kent regularly looks for natural ingredients before purchasing products and uses that as a basis for buying and/or comparing

similar products. The presence and amount of natural and naturally derived ingredients in a product is a material factor in purchasing decisions by Plaintiff Kent.

90.     Plaintiff Kent paid for the Product under the mistaken belief that they were 90% naturally derived. The only information plaintiff had about the proportion of the composition of the Product that was naturally derived was the "90% Naturally Derived" claims on the Products' labels. He did not have any reason to believe that the Products were less than 90% naturally derived as claimed on the label. Nor did he have any reason to know the Products consisted of anything less than 90% naturally derived ingredients. Mr. Kent lacked, and still lacks, knowledge of how the various ingredients are manufactured and/or sourced, and thus was unable to determine which were naturally derived as opposed to synthetic.

91.     Plaintiff Kent did not note any asterisk in the phrase "90% Naturally Derived ingredients" prior to making her purchase, nor did he see any asterisk-linked explanation on the front of the product label. Even if Plaintiff Kent had, the putative explanation on the back label would not have clarified the truth of the product's composition, because the statement "We consider an ingredient naturally derived if it's unchanged from nature or has a natural source and undergone some processing, butt keeps more than 50% of its original structure[;]  90% of our formula, including water, is made of naturally derived content" is still misleading, as it fails to explicitly indicate to him as a layperson that the ingredients are synthetic, not "naturally-derived."  Even now, Plaintiff Kent finds Defendant's putative definition misleading and confusing, and views Defendant's conduct as a bait-and-switch tactic.

92.     Mr. Kent continues to be interested in skin and cosmetic products comprised of natural and naturally derived ingredients, and in particular Defendant Products, and similar care products marketed as comprised of natural and naturally derived ingredients. However, he does not know whether any Defendant Products he may purchase in the future will be subject to the same false advertising, and thus is subject to uncertainty whether his future purchases may subject him to similar economic harm.

**Monica Burrola**

93.     Plaintiff Monica Burrola purchased Defendant's Love Beauty & Planet Vegan Silk Protein 93% Naturally Derived Shampoo and 97% Naturally Derived Conditioner from a grocery store in North Highlands, California around spring of 2024.

94.     Plaintiff Burrola made each of her purchases of the Love Beauty & Planet Products after reading and relying on the product labels that promised that the respective hair care products were 93% and 97% "Naturally Derived." She relied on the "X% Naturally Derived" representation for each purchase and purchased each product because of the "X% Naturally Derived" representations. She also believed in the truth of each representation, i.e., that the product was comprised of ingredients of which 90% were naturally derived. Had Defendant not made the "X% Naturally Derived" claims on its packages in these circumstances, she would not have been drawn to the Products and would not have purchased them. At a minimum she would have paid less for each Product.

95.     Moreover, had Defendant adequately disclosed the proportion of the Products that was naturally derived, Plaintiff Burrola would not have purchased the Products or would have, at minimum, paid less for them. Plaintiff Burrola regularly looks for natural ingredients before purchasing products and uses that as a basis for buying and/or comparing similar products. The presence and amount of natural and naturally derived ingredients in a product is a material factor in purchasing decisions by Plaintiff Burrola.

96.     Plaintiff Burrola paid for the Products under the mistaken belief that each was 93% and 97% naturally derived, respectively. The only information Plaintiff had about the proportion of the composition of the Product that was naturally derived was the "93% Naturally Derived" and "97% Naturally Derived" claims on the Products' labels. She did not have any reason to believe that the Products were less than 93%/97% naturally derived as claimed on the labels. Nor did she have any reason to know the Products consisted of anything less than 93%/97% naturally derived ingredients.  Ms. Burrola lacked, and still lacks, knowledge of how the various ingredients are manufactured and/or sourced, and thus was unable to determine which were naturally derived as opposed to synthetic.

97.     Plaintiff Burrola did not note any asterisk in the phrases "[93%/97%] "Naturally Derived" prior to making her purchase, nor did she see any asterisk-linked explanation on the front of the product label. Even if Plaintiff Burrola had, the putative explanation on the back label would not have clarified the truth of the product's composition, because the statement "We believe in carefully selecting ingredients sourced from nature[;]  97% [/93%] of our formula, including water, is naturally derived, meaning it's unchanged from nature or, after some processing, keeps over 50% of its original structure" is still misleading, as it fails to explicitly indicate to him as a layperson that the ingredients are synthetic, not "naturally-derived."  Even now, Plaintiff Burrola finds Defendant's putative definition misleading and confusing, and views Defendant's conduct as a bait-and-switch tactic.

98.     Ms. Burrola continues to be interested in skin and cosmetic products comprised of natural and naturally derived ingredients, and in particular the Defendant Products, and similar products marketed as comprised of natural and naturally derived ingredients. However, she does not know whether any Defendant Products she may purchase in the future will be subject to the same false advertising, and thus is subject to uncertainty whether her future purchases may subject her to similar economic harm.

**Nitaya McGee**

99.     Plaintiff Nitaya McGee purchased Defendants' Love Beauty & Planet 3-in-1 Avocado Oil, Mango and Vitamin E "97% Naturally Derived" Shampoo from a Target store in Riverside, California around June 2023.

100.     Plaintiff McGee viewed and relied upon the product label, including the statement that it was "97% Naturally Derived" when purchasing the Love Beauty & Planet shampoo. She relied on the "97% Naturally Derived" representation for her purchase and purchased the Product because of the 97% Naturally Derived" representations. She also believed in the truth of the representation, i.e., that the product was 97% naturally derived. Had Defendant not made the "Naturally Derived" claims on its packages in these circumstances, she would not have been drawn to the Product and would not have purchased it. At a minimum she would have paid less for the Product.

101.    Moreover, had Defendant adequately disclosed the proportion of the Product that was naturally derived, Plaintiff McGee would not have purchased the Product or would have, at minimum, paid less for it. Plaintiff McGee regularly looks for natural ingredients before purchasing products and uses that as a basis for buying and/or comparing similar products. The presence and amount of natural and naturally derived ingredients in a product is a material factor in purchasing decisions by Plaintiff McGee.

102.    Plaintiff McGee paid for the Product under the mistaken belief that it was 97% naturally derived. The only information Plaintiff had about the proportion of the composition of the Product that was naturally derived was the "97% Naturally Derived" claim on the Product's label. She did not have any reason to believe that the Product was less than 97% naturally derived as claimed on the label. Nor did she have any reason to know the Product consisted of anything less than 97% naturally derived ingredients. Ms. McGee lacked, and still lacks, knowledge of how the various ingredients are manufactured and/or sourced, and thus was unable to determine which were naturally derived as opposed to synthetic.

103.    Plaintiff McGee did not note any asterisk in the phrases "97% "Naturally Derived" prior to making her purchase, nor did she see any asterisk-linked explanation on the front of the product label. Even if Plaintiff McGee had, the putative explanation on the back label would not have clarified the truth of the product's composition, because the statement "We believe in carefully selecting ingredients sourced from nature[;] 97% of our formula, including water, is naturally derived, meaning it's unchanged from nature or, after some processing, keeps over 50% of its original structure" is still misleading, as it fails to explicitly indicate to him as a layperson that the ingredients are synthetic, not "naturally-derived." Even now, Plaintiff McGee finds Defendant's putative definition misleading and confusing, and views Defendant's conduct as a bait-and-switch tactic.

104.    Ms. McGee continues to be interested in skin and cosmetic products comprised of natural and naturally derived ingredients, and in particular Defendant Products, and similar care products marketed as comprised of natural and naturally derived ingredients. However, she does not know whether any Defendant Products she may purchase in the future will be subject

to the same false advertising, and thus is subject to uncertainty whether her future purchases may subject her to similar economic harm.

## **CLASS ALLEGATIONS**

105. Plaintiffs bring this class action lawsuit on behalf of themselves and a proposed class of similarly situated persons, pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure. Plaintiffs seek to represent the following group of similarly situated persons, defined as follows:

> **Class**: All persons in who purchased, in the State of California, the Products from April 25, 2021 to the present.

106. This action has been brought and may properly be maintained as a class action against Defendant because there is a well-defined community of interest in the litigation and the proposed classes are easily ascertainable.

107. Numerosity: Plaintiffs do not know the exact size the Class, but they estimate that each is composed of more than 100 persons. The persons in the Class are so numerous that the joinder of all such persons is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

108. Common Questions Predominate: This action involves common questions of law and fact to the Class because each class member's claim derives from the deceptive, misleading, and/or false statements and omissions that led them to believe that the Products were composed of specific proportions of naturally derived ingredients when they were not. The common questions of law and fact predominate over individual questions, as proof of a common or single set of facts will establish the right of each member of the Class/Subclass to recover. The questions of law and fact common to the Class/Subclass are:

a. Whether Defendant deceptively, unlawfully, and/or unfairly misrepresented to the Class/Subclass that the Products were comprised of "X% naturally derived" and plant-based ingredients;

b. Whether Defendant's actions violate California laws invoked herein;

CLASS ACTION COMPLAINT

c.      Whether Defendant's advertising and marketing regarding the Products was likely to deceive reasonable consumers;

d.      Whether Defendant's representations or omissions are material to reasonable consumers;

e.      Whether Defendant engaged in the behavior knowingly, recklessly, or negligently;

f.      The amount of profits and revenues earned by Defendant as a result of the conduct;

g.      Whether Class members are entitled to restitution, injunctive and other equitable relief and, if so, what is the nature (and amount) of such relief; and

h.      Whether Class members are entitled to payment of actual, incidental, consequential, exemplary and/or statutory damages plus interest thereon, and if so, what is the nature of such relief.

109.    Typicality: Each Plaintiff's claims are typical of the claims of the other members of the Class/Subclass because, among other things, all such claims arise out of the same wrongful course of conduct engaged in by Defendant in violation of law as complained of herein. Further, the damages of each member of the Class/Subclass were caused directly by Defendant's wrongful conduct in violation of the law as alleged herein.

110.    Adequacy of Representation: Each Plaintiff will fairly and adequately protect the interests of all Class members because it is in their best interests to prosecute the claims alleged herein to obtain full compensation due to them for the unfair and illegal conduct of which she complains. Each Plaintiff also has no interests that are in conflict with, or antagonistic to, the interests of Class members. Plaintiffs have retained highly competent and experienced class action attorneys to represent their interests and that of the Class. By prevailing on their claims, Plaintiffs will establish Defendant's liability to all Class members. Plaintiffs and their counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the Class members and are

determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for class members.

111.    Superiority: There is no plain, speedy, or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the class will tend to establish inconsistent standards of conduct for Defendant and result in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Furthermore, as the damages suffered by each individual member of the Class/Subclass may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.

112.    Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

### CAUSES OF ACTION
### PLAINTIFFS' FIRST CAUSE OF ACTION
#### (Fraud, Deceit and/or Misrepresentation)
#### On Behalf of Each Plaintiff and the Class

113.    Each Plaintiff realleges and incorporates by reference all preceding paragraphs of this Class Action Complaint as if fully set forth herein.

114.    As set forth above, Defendant falsely and/or deceptively represented to each Plaintiff and those similarly situated that the Products were comprised of X% naturally derived/natural origin ingredients and/or primarily of plant-based materials when, in fact, the Products were not. (Specifically, Defendant advertised the Products as 90% to 97% naturally derived ingredients, depending on the specific product.) Defendant knew that the Products were not comprised of "X% naturally derived" ingredients or made primarily from plant-based materials, yet advertised that they were. Defendant made false and/or deceptive representations and statements (by omission and commission) that led reasonable consumers to believe that that

the Products were comprised of ≥X% naturally derived ingredients and comprised primarily of plant-based materials.

115.    Defendant's misrepresentations were material at the time they were made. They concerned material facts that were essential to the purchasing decisions of Plaintiffs and those similarly situated.  Hair and skin care products that are not X% naturally derived ingredients or made primarily from plant based materials are worth less to consumers than such products that are.

116.    Each Plaintiff and those similarly situated reasonably relied to their detriment on Defendant's representations. Had each Plaintiff and those similarly situated been adequately informed and not intentionally deceived by Defendant, they would have acted differently by, without limitation, not purchasing (or paying less for) the Products.

117.    By and through such fraud, deceit, and/or misrepresentations, Defendant intended to induce Plaintiffs and those similarly situated to alter their position to their detriment. Specifically, Defendant fraudulently and deceptively induced each Plaintiff and those similarly situated to, without limitation, purchase the Products.

118.    As a direct and proximate result of Defendant's fraud and misrepresentations, each Plaintiff and those similarly situated have suffered damages. In particular, each Plaintiff seeks to recover on behalf of himself or herself and those similarly situated the amount of the price premium they paid (i.e., the difference between the price consumers paid for the Products and the price they would have paid but for Defendant's misrepresentations), in an amount to be proven at trial.

119.    Defendant's conduct as described herein was willful and malicious and was designed to maximize Defendant's profits even though Defendant knew that it would cause loss and harm to Plaintiffs and those similarly situated.

**PLAINTIFFS' SECOND CAUSE OF ACTION**
**(Violation of the Consumers Legal Remedies Act,**
**California Civil Code § 1750, et seq.)**
**On Behalf of Each Plaintiff and the Class**

120.    Each Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

121. This cause of action is brought pursuant to the California Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.* ("CLRA").

122. Defendant's actions, representations, omissions, and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale of goods to consumers.

123. Each Plaintiff and other members of the class are "consumers" as that term is defined by the CLRA in California Civil Code § 1761(d).

124. The Products that each Plaintiff and similarly situated members of the class purchased are "goods" within the meaning of California Civil Code § 1761.

125. By engaging in the actions, representations, and conduct set forth in this Class Action Complaint, as described above, Defendant has violated, and continues to violate, §§ 1770(a)(5), 1770(a)(7), and 1770(a)(9) of the CLRA. In violation of California Civil Code §1770(a)(2), Defendant represented source, sponsorship, approval, or certification of goods or services that they do not have. In violation of California Civil Code §1770(a)(3), Defendant represented affiliation, connection, or association with, or certification by, another that they do not have. In violation of California Civil Code §1770(a)(5), Defendant represented that goods have approval, characteristics, uses, benefits, and qualities that they do not have. In violation of California Civil Code §1770(a)(7), Defendant's acts and practices constitute improper representations that the goods and/or services it sells are of a particular standard, quality, or grade, when they are of another. In violation of California Civil Code §1770(a)(9), Defendant advertised goods with intent not to sell them as advertised.

126. Specifically, Defendant's acts and practices led consumers to believe that X% of the ingredients in the Products were naturally derived, when they were not. Defendant additionally made representations and statements (by omission and commission) that led reasonable consumers to believe that that the Products were primarily plant-based, including use of avocado oil, silk protein, eucalyptus and birch oils, and other natural materials as predominant ingredients.

127.    Further, Defendant omitted material facts that it had a duty to disclose, as alleged above.

128.    Defendant's concealment of the true characteristics of the Products was material to Plaintiffs and Class members. Had they known the truth, Plaintiffs and the Class members would not have purchased the Products, or would have paid significantly less for them.

129.    Defendant, as explained above, had an ongoing duty to Plaintiffs and the Class members to refrain from unfair and deceptive practices under the CLRA in the course of their business. Specifically, Defendant owed Plaintiffs and Class members a duty to disclose material facts concerning the Products because it possessed exclusive knowledge, it intentionally concealed them from Plaintiffs and Class members, and/or it made partial representations that were misleading since it concealed the aforementioned facts.

130.    Plaintiffs and Class members had no way of learning the facts that Defendant had concealed or failed to disclose because they were not experts in chemistry or chemical manufacturing, and did not have access to information regarding which materials Defendant considered "naturally derived," nor its basis for that characterization.

131.    Plaintiffs and class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations and/or failure to disclose material information.

132.    Each Plaintiff requests that this Court enjoin Defendant from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to California Civil Code § 1780(a)(2). If Defendant is not restrained from engaging in these types of practices in the future, Plaintiffs and other members of the class will continue to suffer harm.

133.    On February 6, 2025, Plaintiff Kent provided Defendant with notice and demand on behalf of himself and all others similarly situated that Defendant correct, repair, replace or otherwise rectify the unlawful, unfair, false and/or deceptive practices complained of herein via U.S. mail. Plaintiff Burrola also provided notice on November 11, 2024. Despite receiving the aforementioned notice and demand, Defendant failed to do so in that, among other things, it failed to identify similarly situated customers, notify them of their right to correction, repair,

replacement or other remedy, and/or to provide that remedy. Plaintiff similarly provided notice via U.S. mail in 2024. Accordingly, Plaintiffs seek, pursuant to California Civil Code § 1780(a)(3), on behalf of themselves and those similarly situated class members, compensatory damages, punitive damages and restitution of any ill-gotten gains due to Defendant's acts and practices.

134.    Plaintiffs also request that this Court award their costs and reasonable attorneys' fees pursuant to California Civil Code § 1780(d).

## PLAINTIFFS' THIRD CAUSE OF ACTION
### (False Advertising, Business and Professions Code § 17500, et seq. ("FAL"))
### On Behalf of Each Plaintiff and the California Subclass

135.    Each Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

136.    Beginning at an exact date unknown to each Plaintiff, but within three (3) years preceding the filing of the Class Action Complaint, Defendant made untrue, false, deceptive and/or misleading statements in connection with the advertising and marketing of the Products, and in particular those advertised as being "X% naturally derived" and plant-based.

137.    As set forth in this Class Action Complaint, Defendant has made representations and statements (by omission and commission) that led reasonable consumers to believe that various specific percentages (generally 90-97%) of the ingredients in the Products were naturally derived. Defendant additionally made representations and statements (by omission and commission) that led reasonable consumers to believe that that the Products were primarily plant-based.

138.    Each Plaintiff and those similarly situated relied to their detriment on Defendant's false, misleading and deceptive advertising and marketing practices. Had Plaintiffs and those similarly situated been adequately informed and not intentionally deceived by Defendant, they would have acted differently by, without limitation, paying less for the Products.

139.    Defendant's acts and omissions are likely to deceive the general public.

140.    Defendant engaged in these false, misleading and deceptive advertising and marketing practices to increase its profits. Accordingly, Defendant has engaged in false

advertising, as defined and prohibited by section 17500, *et seq.* of the California Business and Professions Code.

141.    The aforementioned practices, which Defendant has used, and continues to use, to its significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendant's competitors as well as injury to the general public.

142.    Each Plaintiff seeks, on behalf of those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Defendant from Plaintiffs, the general public, or those similarly situated by means of the false, misleading and deceptive advertising and marketing practices complained of herein, plus interest thereon. Though Plaintiffs did not buy the Products directly from Defendant, a certain amount of money flowed from Plaintiffs who purchased the Products through retailers to Defendant. Plaintiffs seek restitution of those amounts. If Plaintiffs' and class members' claims at law fail, Plaintiffs, those similarly situated and/or other consumers will have no adequate remedy at law by which they can obtain recovery for the economic harm they have suffered. Each Plaintiff seeks, on behalf of those similarly situated, an injunction to prohibit Defendant from continuing to engage in the false, misleading and deceptive advertising and marketing practices complained of herein.

143.    Each Plaintiff and those similarly situated are further entitled to and do seek both a declaration that the above-described practices constitute false, misleading and deceptive advertising, and injunctive relief restraining Defendant from engaging in any such advertising and marketing practices in the future. Such misconduct by Defendant, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendant will continue to violate the laws of California, unless specifically ordered to comply with the same. Even where Defendant has discontinued certain products and/or removed the "X% naturally derived" claim for a given Product, it has simultaneously introduced new products making the same false and misleading claims. This expectation of future violations will require current and future customers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendant to which Defendant is not entitled. Plaintiffs, those similarly situated and/or other consumers have

no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

144.    As a direct and proximate result of such actions, each Plaintiff and the other members of the Class have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such false, deceptive and misleading advertising in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

**PLAINTIFFS' FOURTH CAUSE OF ACTION**
**(Negligent Misrepresentation)**
**On Behalf of Each Plaintiff and the Class**

145.    Each Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

146.    In selling the Products to consumers, Defendant made false and misleading statements regarding them, as described more fully above. Defendant deceptively failed to inform consumers, at the time of their purchase, that less than X% of the ingredients claimed in the Products were naturally derived or natural origin. Defendant additionally made representations and statements (by omission and commission) that led reasonable consumers to believe that that the Products were X% "Naturally Derived" and plant-based.

147.    These representations were material at the time they were made. They concerned material facts that were essential to the decisions of Plaintiffs and those similarly situated regarding how much to pay for the Products.

148.    Defendant made identical misrepresentations and omissions to members of the Class regarding the Products.

149.    Defendant should have known its representations were false, and that it had no reasonable grounds for believing them to be true when it made them.

150.    By and through such negligent misrepresentations, Defendant intended to induce each Plaintiff and those similarly situated to alter their position to their detriment. Specifically, Defendant negligently induced each Plaintiff and those similarly situated, without limitation, to purchase the Products at the price they paid.

151. Each Plaintiff and those similarly situated reasonably relied on Defendant's representations. Specifically, each Plaintiff and those similarly situated paid as much as they did for the Products.

152. Because Plaintiffs reasonably relied on Defendant's false representations, each Plaintiff and those similarly situated were harmed in the amount of the price premium they paid (i.e., the difference between the price they paid for the Products and the price they would have paid but for Defendant's misrepresentations).

## PLAINTIFFS' FIFTH CAUSE OF ACTION
### (Unfair, Unlawful and Deceptive Trade Practices, Business and Professions Code § 17200, *et seq.*)
### On Behalf of Each Plaintiff and the California Subclass

153. Each Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

154. Within four (4) years preceding the filing of this Class Action Complaint, and at all times mentioned herein, Defendant has engaged in, and continues to engage in, unfair, unlawful and deceptive trade practices in California by carrying out the unfair, deceptive and unlawful business practices outlined in this Class Action Complaint. In particular, Defendant has engaged in, and continues to engage in, unfair, unlawful and deceptive trade practices by, without limitation, the following:

      a.    engaging in misrepresentation and omissions as described herein;

      b.    violating the California Consumer Legal Remedies Act as described herein;

      c.    violating the FAL as described herein.

155. Each Plaintiff and those similarly situated relied to their detriment on Defendant's unfair, deceptive and unlawful business practices. Had each Plaintiff and those similarly situated been adequately informed and not deceived by Defendant, they would have acted differently by, without limitation, not paying for, or, at a minimum, paying less for the Products.

156. Defendant's acts and omissions are likely to deceive the general public.

157.    Defendant engaged in these unlawful, deceptive, and unfair practices to increase its profits. Accordingly, Defendant has engaged in unlawful trade practices, as defined and prohibited by section 17200, *et seq.* of the California Business and Professions Code.

158.    In addition to the unlawful and deceptive acts described above, Defendant engaged in unfair practices by violating the Federal Trade Commission's guides against bait advertising. 16 C.F.R. §§ 238.1-4. The policy provides that "No statement or illustration should be used in any advertisement which creates a false impression of the grade, quality, make, value, currency of model, size, color, usability, or origin of the product offered, or which may otherwise misrepresent the product in such a manner that later, on disclosure of the true facts, the purchaser may be switched from the advertised product to another." 16 C.F.R. § 238.2(a). Defendant's aforementioned acts violated this policy, including its representations that the Products comprised "X% naturally derived ingredients," and that plant materials such as eucalyptus, birch, vegan silk protein, avocado oil, and mango were major ingredients.

159.    The aforementioned practices, which Defendant has used to its significant financial gain, also constitute unlawful competition and provides an unlawful advantage over Defendant's competitors as well as injury to the general public.

160.    As a direct and proximate result of such actions, each Plaintiff and the other members of the Class have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive, unfair and/or unlawful trade practices and unfair competition in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. Among other things, Plaintiffs and the Class lost the amount of the price premium they paid (i.e., the difference between the price consumers paid for the Products and the price they would have paid but for Defendant's misrepresentations), in an amount to be proven at trial. If Plaintiffs' and class members' claims at law fail, Plaintiffs, those similarly situated and/or other consumers will have no adequate remedy at law by which they can obtain recovery for the economic harm they have suffered.

161.    Each Plaintiff seeks, on behalf of those similarly situated, a declaration that the above-described trade practices are fraudulent, unfair, and/or unlawful.

162.    Each Plaintiff seeks, on behalf of those similarly situated, an injunction to prohibit Defendant from offering the Products within a reasonable time after entry of judgment with the unlawful claims. Even where Plaintiff has discontinued certain products and/or removed the "X% naturally derived" claim for a given product, it has simultaneously introduced new products making the same false and misleading claim. Such misconduct by Defendant, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendant will continue to violate the laws of California unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendant to which Defendant was not entitled. Plaintiffs, those similarly situated and/or other consumers have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

**PRAYER FOR RELIEF**

**WHEREFORE**, each Plaintiffs, on behalf of themselves and those similarly situated, respectfully requests that the Court enter judgment against Defendant as follows:

A.    Certification of the proposed Class, including appointment of Plaintiffs' counsel as class counsel;

B.    An order temporarily and permanently enjoining Defendant from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C.    An award of compensatory damages in an amount to be determined at trial, except for those causes of action where compensatory damages are not legally available;

D.    An award of statutory damages in an amount to be determined at trial, except for those causes of action where statutory damages are not legally available;

E.    An award of punitive damages in an amount to be determined at trial, except for those causes of action where punitive damages are not legally available;

F.    An award of treble damages, except for those causes of action where treble damages are not legally available;

G.     An award of restitution in an amount to be determined at trial;

H.     An order requiring Defendant to pay both pre- and post-judgment interest on any amounts awarded;

I.     For reasonable attorneys' fees and the costs of suit incurred; and

J.     For such further relief as this Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiffs hereby demand a trial by jury.

Dated: April 25, 2025

**GUTRIDE SAFIER LLP**

*/s/ Anthony J. Patek/s/*
Seth A. Safier (State Bar No. 197427)
   seth@gutridesafier.com
Anthony J. Patek (State Bar No. 228964)
   anthony@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

*Attorneys for Plaintiffs*

# APPENDIX A

## CLRA DECLARATION

I, Jeffrey Kent declare:

1.      I am a Plaintiff in this action. If called upon to testify, I could and would competently testify to the matters contained herein based upon my personal knowledge.

2.      I submit this Declaration pursuant to California Code of Civil Procedure section 2215.5 and California Civil Code section 1780(d).

3.      As set forth in my complaint, I purchased the Dove Men + Care Eucalyptus and Birch 2-in-1 Shampoo and Conditioner from a Walgreens and a Safeway store in San Francisco, California. My last purchase was around August of 2024.

4.      I made my purchase of the Dove Men + Care Eucalyptus and Birch 2-in-1 Shampoo and Conditioner after viewing and relying upon the products' labels, including the statement that the Dove Men + Care Eucalyptus and Birch 2-in-1 Shampoo and Conditioner was "90% Naturally Derived."

I declare under penalty of perjury under the laws of California that the foregoing is true and correct.

Executed this _25_ day of April, 2025 in San Francisco, California.

_____
                                                          Jeffrey Kent

DECLARATION RE CAL. CIV. CODE SECTION 1780(D) JURISDICTION
Doc ID: a5700458967dc1f24729dc552b9818a409021d74

# APPENDIX B

| | Product | Package Claims | Product Images |
|---|---|---|---|
| **Love Beauty & Planet Shampoo and Conditioner** | | | |
| 1. | Coconut Water & Mimosa Flower (shampoo) | "93% Naturally Derived" |  |

| 2. | Coconut Water & Mimosa Flower (conditioner) | "97% Naturally Derived" |  |

INGREDIENTS/INGRÉDIENTS : WATER (EAU)*, CETEARYL ALCOHOL*, BEHENTRIMONIUM CHLORIDE*, COCOS NUCIFERA (COCONUT) OIL*, COCOS NUCIFERA (COCONUT) LIQUID ENDOSPERM*, ACACIA DECURRENS FLOWER EXTRACT*, FRAGRANCE (PARFUM), DIPROPYLENE GLYCOL, LACTIC ACID*, SODIUM BENZOATE, HEXYL CINNAMAL, LIMONENE, LINALOOL.
* NATURALLY-DERIVED INGREDIENTS/INGRÉDIENTS D'ORIGINE NATURELLE

| 3. | Vegan Keratin & Sun-Kissed Mandarin (shampoo) | "93% Naturally Derived"<br><br>"100% Biodegradable Formula"<br><br>"Sulfate Free Shampoo"<br><br>"5-in-1 multi-benefit: Deep Cleanse, Hydration, Strength, Fullness, Shine for Hair" |  |

| 4. | Vegan Keratin & Sun-Kissed Mandarin (conditioner) | "97% Naturally Derived"<br><br>"100% Biodegradable Formula"<br><br>"Sulfate Free Shampoo"<br><br>"5-in-1 multi-benefit: Deep Clenase, Hydration, Strength, Fullness, Shine for Hair" |  |
|---|---|---|---|

| 5. | Argan Oil & Lavender (shampoo) | "93% Naturally Derived" (shampoo) <br><br> "100% Biodegradable Formula" |  |

| 6. | Argan Oil & Lavender (conditioner) | "97% naturally derived"<br><br>"100% Biodegradable Formula" |  |

| 7. | Rice Oil & Angelica Essence (shampoo) | "97% Naturally Derived"  "nourish"  "gentle cleanse" |  |
|----|----|----|----|

| 8. | Coconut Oil & Ylang Ylang (shampoo) | "93% Naturally-Derived" |  |

| 9. | Coconut Oil & Ylang Ylang (conditioner) | "97% Naturally-Derived" |  |

| 10. | Murumuru Butter & Rose (shampoo) | "93% Naturally Derived" |  |

| 11. | Coconut Milk & White Jasmine (shampoo) | "93% Naturally Derived" |  |

| 12. | Coconut Milk & White Jasmine (conditioner) | "97% Naturally Derived" |  |

| 13. | Black Tea Kombucha & Red Ginger (shampoo) | "93% naturally derived" |  |

| 14. | Black Tea Kombucha & Red Ginger (conditioner) | "97% naturally derived" |  |

| 15. | Aloe & Sabila Grapefruit & Vitamin B3 (shampoo) | "93% Naturally Derived" |  |

| 16. | Aloe & Sabila Grapefruit & Vitamin B3 (conditioner) | "97% Naturally Derived" |  |

| 17. | Coconut Oil & Chamomile (shampoo) | "93% Naturally Derived" |  |

| 18. | Coconut Oil & Chamomile (conditioner) | "97% Naturally Derived" |  |

| 19. | Japanese Sakura & Clove Leaf (shampoo) | "93% Naturally Derived" |  |
|-----|----|----|----|

| 20. | Japanese Sakura & Clove Leaf (conditioner) | "97% Naturally Derived" |  |

| 21. | Shea Butter & Sandalwood (conditioner) | "97% Naturally Derived" |  |

| 22. | Charcoal & Bergamot (shampoo) | "93% Naturally Derived" |  |

| 23. | Charcoal & Bergamot (conditioner) | "97% Naturally Derived" |  |
|---|---|---|---|

| 24. | Hemp Seed Oil & Nana Leaf (conditioner) | "97% Naturally Derived" |  |

| 25. | Avocado Oil, Aguacate, Mango & Vitamin E (shampoo) | "97% Naturally Derived" |  |



smartlabel

Love Beauty And Planet
**Love Beauty and Planet, Sulfate Free Shampoo,
Avocado Oil Aguacate, Mango & Vitamin E**

13.5 FL OZ - 400 mL

| | | | | |
|---|---|---|---|---|
| Ingredients & Contents | Health, Safety & Environment | Usage & Feeding | About this Product | Company, Brand & Sustainability |

Water (Aqua)*

Cetearyl Alcohol*

Hydroxypropyl Starch Phosphate*

Decyl Glucoside*

Lactic Acid*

Stearamidopropyl Dimethylamine*

Fragrance (Parfum)

Behentrimonium Chloride*

Persea Gratissima (Avocado) Oil*

Mangifera Indica (Mango) Juice*

Tocopheryl Acetate

Cocos Nucifera (Coconut) Oil*

Citrus Nobilis (Mandarin Orange) Peel Oil*

Dipropylene Glycol

Sodium Benzoate

Sodium Chloride*

Benzyl Benzoate

Hexyl Cinnamal

Limonene

Linalool

*NATURALLY DERIVED INGREDIENTS

Please refer to the label on your product for the most accurate nutrition, ingredient, and allergen information.

Information updated on 07-Nov-2022 by Love Beauty And Planet.

Manufactured By Unilever

Distributed By Unilever Trumbull, CT, 06611

| 26. | Avocado Oil, Aguacate, Mango & Vitamin E (conditioner) | "97% Naturally Derived" |  |



| 27. | Tea Tree Oil & Eucalyptus (conditioner) | "97% naturally derived" |  |
| --- | --- | --- | --- |

**Love Beauty & Planet Body Wash, Body Cream, and Body Lotion**

| 28. | Coconut Water & Vitamin C | "92% Naturally Derived" |  |

| 29. | Vanilla Bean & Hyaluronic Serum Body Wash | "92% Naturally Derived" |  |
|-----|-------------------------------------------|-------------------------|----------------------|

**INGREDIENTS:** WATER (AQUA), COCAMIDOPROPYL BETAINE*, SODIUM METHYL LAUROYL TAURATE*, SODIUM CHLORIDE, GLYCERIN*, GLYCOL STEARATE, SODIUM LAUROAMPHOACETATE, FRAGRANCE (PARFUM), SODIUM BENZOATE, CITRIC ACID, LAURIC ACID*, CETRIMONIUM CHLORIDE, CYAMOPSIS TETRAGONOLOBA (GUAR) GUM*, CELLULOSE, STEARIC ACID*, CELLULOSE GUM*, STEARAMIDE AMP, COCOS NUCIFERA (COCONUT) OIL*, VANILLA PLANIFOLIA FRUIT EXTRACT*, HYDROLYZED HYALURONIC ACID, LINALOOL.
*PLANT-BASED INGREDIENTS

| 30. | Kiwi & Peptides Body Wash | "92% Naturally-Derived" |  |

| 31. | Watermelon & Hyaluronic Acid Body Wash | "92% Naturally Derived" |  |
| --- | --- | --- | --- |

INGREDIENTS: WATER (AQUA), COCAMIDOPROPYL BETAINE*, SODIUM METHYL LAUROYL TAURATE*, GLYCERIN*, SODIUM CHLORIDE, FRAGRANCE (PARFUM), COCAMIDE MEA*, SODIUM BENZOATE, CITRIC ACID, LAURIC ACID*, SODIUM METHYLTAURATE, STEARIC ACID*, COCOS NUCIFERA (COCONUT) OIL*, CITRULLUS LANATUS (WATERMELON) FRUIT EXTRACT*, HYDROLYZED HYALURONIC ACID, CETRIMONIUM CHLORIDE, ALPHA-ISOMETHYL IONONE, GERANIOL, LINALOOL. *PLANT-BASED INGREDIENTS

| 32. | Rose Water & Niacinamide Body Wash | "92% Naturally Derived" |  |
| --- | --- | --- | --- |

INGREDIENTS: WATER (AQUA), COCAMIDOPROPYL BETAINE*, SODIUM METHYL LAUROYL TAURATE*, GLYCERIN*, SODIUM CHLORIDE, FRAGRANCE (PARFUM), GLYCOL STEARATE, SODIUM BENZOATE, SODIUM LAUROAMPHOACETATE, CITRIC ACID, LAURIC ACID*, CETRIMONIUM CHLORIDE, CYAMOPSIS TETRAGONOLOBA (GUAR) GUM*, CELLULOSE, STEARIC ACID*, CELLULOSE GUM*, STEARAMIDE AMP, COCOS NUCIFERA (COCONUT) OIL*, ROSA DAMASCENA FLOWER WATER*, NIACINAMIDE, SODIUM HYDROXIDE, CITRONELLOL, LINALOOL.
*PLANT-BASED INGREDIENTS

| 33. | Grapefruit & Red Ginger Shower & Bath Gel | "92% Naturally Derived" |  |
|---|---|---|---|

| 34. | Cactus Flower & Basil | "92% Naturally Derived" |  |

| 35. | Rose + Vitamin B3 Body Lotion | "95% Naturally Derived" |  |

| 36. | Warm Vanilla & Coconut Body Cream | "92% Naturally Derived" |  |



| 37. | Cherry Blossom & Tea Rose Body Cream | "92% Naturally Derived" |  | |



| 38. | Cactus Flower & Basil Body Cream | "92% Naturally Derived" |  |
| --- | --- | --- | --- |
| 39. | Pomegranate & Geranium Body Cream | "92% Naturally Derived" | |

| 40. | Grapefruit & Red Ginger Body Cream | "92% Naturally Derived" |  |
|-----|-----|-----|-----|

| 41. | Mango & Cupuacu Butter Tropical Bliss Body Lotion | "95% Naturally Derived" |  |
|---|---|---|---|

| 42. | Black Tea Kombucha & Red Ginger Vitality Zing Body Lotion | "95% Naturally Derived" |  |
| --- | --- | --- | --- |

| 43. | Tucuma Butter & Vanilla All Snuggled Up Body Lotion | "95% Naturally Derived" |  |

| 44. | Mandarin + Vitamin C Body Lotion | "95% Naturally Derived" |  |

| 45. | Coconut Water + Hyaluronic Acid Body Lotion | "95% Naturally Derived" |  |

| 46. | Vitamin C & Juicy Mandarin Happy Summer Vibes Body Lotion | "95% Naturally Derived" |  |

| 47. | Shea Butter + Vitamin E Body Lotion | "95% Naturally Derived" |  |

INGREDIENTS: WATER (AQUA), STEARIC ACID, GLYCERIN, NIACINAMIDE, GLYCINE SOJA (SOYBEAN) OIL, GLYCERYL STEARATE, FRAGRANCE (PARFUM), CETYL ALCOHOL, PHENOXYETHANOL, CAPRYLYL GLYCOL, HYDROXYETHYLCELLULOSE, CARBOMER, DILAURYL THIODIPROPIONATE, DISODIUM EDTA, BUTYROSPERMUM PARKII (SHEA) BUTTER, TOCOPHERYL ACETATE, FUSANUS SPICATUS WOOD OIL, COUMARIN, LINALOOL.

| 48. | Argan Oil & Lavender Sooth & Serene Lotion | "95% Naturally Derived" |  |

**Love Beauty & Planet Hair Care**

| 49. | Rice Oil & Angelica Essence Curls & Waves Conditioning and Styling Treatment | "98% Naturally Derived" |  |

| 50. | Rice Oil * Angelica Essence Pre-Cleanse Primer, Pre-Shampoo Conditioning Detangler | "98% Naturally Derived" |  |

| 51. | Hemp Seed Oil & Nana Leaf | "94% Naturally Derived" |  |
| --- | --- | --- | --- |

| 52. | Charcoal & Bergamot Shampoo Scrub | "91% Naturally Derived" |  |

| Love Beauty & Planet Liquid Hand Wash | | | |
|---|---|---|---|
| 53. | Tea Tree and Vetiver | "95% Naturally Derived" |  |

| 54. | Yuzu and Vanilla | "95% Naturally Derived" |  |

| **Dove Men + Care Shampoo and Conditioner** | | | |
|---|---|---|---|
| 55. | Ginger & Coconut Oil Hydration 2-in-1 Shampoo + Conditioner | "92% Naturally Derived" |  |

| 56. | Sandalwood & Cardamom Oil Thick & Full 2-in-1 Shampoo + Conditioner | "92% Naturally Derived" |  |

| 57. | Eucalyptus + Birch Revitalizing 2-in-1 Shampoo + Conditioner | "90% Naturally Derived" |  |

| 58. | Lime + Cedarwood Reinvigorating™ 2-in-1 Shampoo + Conditioner | "90% Naturally Derived" |  |

| 59. | Charcoal + Clay Purifying Shampoo | "90% Naturally Derived" |  |

| 60. | Pure Fresh Orange & Sage With Vitamin & Mineral Complex 2-in-1 | "92% Naturally Derived" |  |

| 61. | Strengthening Avocado & Tea Tree Oil With Vitamin & Mineral Complex 2-in-1 | "92% Naturally Derived" |  |

| Dove Men's + Care Body Wash | | | |
|---|---|---|---|
| 62. | Eucalyptus + Cedar Oil Relax Body Wash | "92% Naturally Derived" |  |

| 63. | Lime + Avocado Oil Body Wash | "92% Naturally Derived" |  |
| --- | --- | --- | --- |

| 64. | Sandalwood + Cardamom Oil Body Wash | "92% Naturally Derived" |  |

| 65. | Rebalance Tea Leaves + Chaga Daily Nutrients Body Wash | "92% Naturally Derived" |  |

| 66. | Renourish Mandarin + Maitake Daily Nutrients Body Wash | "92% Naturally Derived" |  |

| 67. | Charcoal + Clove Body Wash | "92% Naturally Derived" |  |

| 68. | Blood Orange + Sage Body Wash | "92% Naturally Derived" |  |

| 69. | Awaken Turmeric + Ginger Root Face + Body Wash | "92% Naturally Derived" |  |
|-----|-----|-----|-----|

| 70. | Blackcurrant + Cedarwood | "92% Naturally Derived" |  |

| 71. | Coastal Cedar + Bergamot | "92% Naturally Derived" |  |
|-----|--------------------------|--------------------------|---|

INGREDIENTS/INGRÉDIENTS : WATER (EAU), COCAMIDOPROPYL BETAINE, GLYCERIN, SODIUM BENZOATE, SODIUM METHYL LAUROYL TAURATE, SODIUM LAUROYL ISETHIONATE, LAURIC ACID, SODIUM CHLORIDE, FRAGRANCE (PARFUM), STEARIC ACID, PALMITIC ACID, HYDROXYSTEARIC ACID, CEDRUS ATLANTICA WOOD EXTRACT, CITRUS AURANTIUM BERGAMIA (BERGAMOT) FRUIT OIL, TOCOPHERYL ACETATE, NIACINAMIDE, MORINGA OLEIFERA SEED EXTRACT, CHLOROPHYLLIN-COPPER COMPLEX, COCAMIDE MEA, CAPRYLOYL GLYCINE, UNDECYLENOYL GLYCINE, PPG-9, CITRIC ACID, CITRONELLOL, LINALOOL, CARAMEL.

| 72. | Holy Basil + Hemp Seed Oil | "92% Naturally Derived" |  |

| **babyDove Products** | | | |
|---|---|---|---|
| 73. | Textured Hair Care Hydrating Shampoo | "94% Naturally Derived" |  |

| 74. | Textured Hair Care Softening Conditioner | "96% Naturally Derived" |  |

| 75. | Textured Hair Care Caring Detangler Cream, Curl Nourishment | "96% Naturally Derived" |  |
| --- | --- | --- | --- |

| 76. | Melanin-Rich Skin Nourishment Baby Oil | "99% Naturally Derived" |  |

| 77. | Melanin-Rich Skin Nourishment Baby Wash | "95% Naturally Derived" |  |

| 78. | Caring By Nature Baby Oil | "99% Naturally Derived" |  | |

| 79. | Caring By Nature Foaming Wash | "96% Naturally Derived" |  |

| 80. | Caring By Nature Lotion | "98% Naturally Derived" |  |